# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

---

**ADAM BLANK, individually and as trustee of the ADAM BLANK 2012 GRAT, ACKER FAMILY 2012 GIFT TRUST and ACKER FAMILY 2013 GIFT TRUST,**

                   **Plaintiffs,**

       **-against-**

**TRIPOINT GLOBAL EQUITIES, LLC, TRIPOINT CAPITAL ADVISORS, LLC, MARK H. ELENOWITZ and MICHAEL BOSWELL,**

                   **Defendants.**

---

**17-cv-00876 (ALC)**

**OPINION AND ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Adam Blank, Acker Family 2012 Gift Trust, and Acker Family 2013 Gift Trust (collectively "Plaintiffs") bring this action against Defendants TriPoint Global Equities, LLC ("TriPoint Global"), TriPoint Capital Advisors, LLC ("TriPoint Capital") (collectively, "TriPoint Entities"), along with Mark H. Elenowitz and Michael Boswell (all collectively "Defendants") alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Sections 9(a)(4) and 9(f) of the Exchange Act, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment and constructive trust, promissory estoppel, breach of fiduciary duty, and violations of New York General Business Law § 349.[1] Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motions are GRANTED in part and DENIED in part.

---

[1] Plaintiffs have voluntarily withdrawn their claims for negligence and mutual mistake. *See* ECF No. 45 at 3 n.5.

# BACKGROUND

## I.  Factual Background

The following facts are taken from the allegations contained in Plaintiffs' First Amended Complaint ("FAC") as well as the parties' declarations submitted in connection with the instant motion to dismiss. Plaintiffs' allegations are presumed true for the purposes of this motion to dismiss.

Blank is a duly appointed and authorized trustee of the Adam 2012 GRAT, a retained annuity trust, and the Acker Family 2012 and 2013 Gift Trusts, family gift trusts. FAC ¶¶ 7-10. TriPoint Global and TriPoint Capital sell and provide various financial services. *Id.* TriPoint Global is a registered broker-dealer with the SEC, *id.* ¶ 12, while TriPoint Capital is not authorized to conduct business in the State of New York and is not a registered broker-dealer, *id.* ¶ 14. Both entities operate out of the same office in New York and use the same contact information. *Id.* ¶¶ 11, 13, 21-26. Plaintiffs allege that TriPoint Global and TriPoint Capital operate together. *Id.* Elenowitz serves as the senior principal and Chief Executive Officer ("CEO") of TriPoint Global and TriPoint Capital as well as their unincorporated affiliate BANQ. *Id.* ¶ 16. Boswell is the co-founder, President, Chief Operating Officer ("COO"), and Chief Compliance Officer ("CCO") of TriPoint Global, as well as a Managing Director of TriPoint Capital. *Id.* ¶ 18. Together with Louis Taubman, Elenowitz and Boswell make up the TriPoint Entities' "Executive Team." *Id.* ¶ 20.

Plaintiffs allege that Defendants were part of a Ponzi scheme. According to the complaint, Defendants—along with Joseph Meli, Steven Simmons, Matthew Harriton, and their corporate entities—raised approximately $81 million from at least 125 investors for purported investments in ticket reselling enterprises in order to enrich themselves. FAC ¶ 1. Meli,

2

Simmons, Harrinton and their corporate entities are currently facing a range of criminal and SEC charges related to this conduct. *See id.* & n.1. Essentially, Plaintiffs allege that Defendants convinced Plaintiffs to invest in the ticket resale business without conducting the necessary due diligence, and without disclosing that they were earning commissions from the Ponzi operators for soliciting investments in that business. *Id.* ¶¶ 4-5, 51.

### A.     January 11, 2016 Meeting

On January 11, 2016, Blank and Elenowitz met at a restaurant to discuss the possibility of developing a business relationship. FAC ¶ 30. Through this relationship, Defendants would provide financial advisory services and assist Plaintiffs in finding investment opportunities. *Id.* During the meeting, Blank informed Elenowitz that he "had no appetite for high risk investments" and that "due diligence and safe investments would be the primary considerations in determining whether [Plaintiffs] would authorize the trusts he directed to make investments with [TriPoint]." *Id.* ¶ 35.

Plaintiffs allege that Elenowitz made a series of material misstatements to Blank in response. First, Elenowitz represented himself as a trusted advisor that focused on protecting his clients and investors. *Id.* ¶ 36. Second, Elenowitz stated that the ticket resale business was secure. Elenowitz represented that the ticket resale business was a "no-brainer," Blank "can't lose," any investments would "fully meet [Plaintiff's] stated requirements," and such investments were the "the safest and most conservative investments." *Id.* ¶¶ 36, 38, 42. Specifically, Elenowitz conveyed that the investment was safe because the "tickets had intrinsic value," and thus "could always be sold at 'face value'" and, further, the operators of the investment scheme "had purchased solid insurance in case of event cancellations," meaning "all investors were fully covered should there even be one cancellation." *Id.* ¶ 43. Third, Elenowitz did not reveal that TriPoint Global was a licensed broker-dealer that was acting as a promoter for

the operators of the alleged Ponzi scheme and was receiving commissions for recommending investments in the ticket resale business. *Id.* ¶¶ 51; 67. To the contrary, Elenowitz told Blank that Defendants would forgo commissions on Plaintiffs' investments to establish a long term business and investment relationship. *Id.* ¶ 51. Finally, Elenowitz represented that he and TriPoint conducted investigations into, and due diligence of, the ticket resale business. Elenowitz emphasized to Blank that the TriPoint Entities "conducted complete due diligence on every proposed investment." *Id.* ¶ 36. Indeed, he "personally reviewed and analyzed the ticket resale companies' financial statements and business records to ensure that all corporate governance was handled appropriately including ensuring that the operators were handling financial and related issues in a customary and prudent manner." *Id.* ¶ 40; *accord* ¶ 43 ("the TriPoint team reviewed the business records and documents to support the purchase and sale of the millions of dollars of event tickets"). Elenowitz further represented that, in addition to conducting due diligence, he "personally knew the owners of the ticket resale business" and met with them regularly. *Id.* ¶ 40. He also stated that two of his partners and many TriPoint clients have been invested in the ticket resale business, "always receiving the promised returns." *Id.* ¶ 41.

Also at this meeting, Elenowitz invited Blank to "take a look at the three TriPoint websites, including TriPoint Advisory, TriPoint Global and BANQ." *Id.* ¶ 31. At various points during 2016, Blank reviewed TriPoint's websites and relied upon the information, especially TriPoint's pronouncement that they provide "Trusted Advice" and have "specialized practices in capital markets, advisory, corporate consulting... corporate governance and compliance services." *Id.*

## B.     January to December 2016 Conversations

Elenowitz made similar representations at various times between January and December 2016. For instance, Elenowitz represented that he would "have [Blank's] back and make sure that every investment was fully and completely vetted, reviewed and investigated before [Elenowitz] and TriPoint would make a recommendation to [Plaintiffs]" to make an investment. *Id.* ¶ 44. Indeed, Elenowitz represented that he and TriPoint were "uniquely positioned to assist" Plaintiffs. *Id.* ¶ 45. The "TriPoint Business Model" of the three experienced professionals would work together "to ensure that all investments were fully vetted and investigated" and there "would be regular evaluations concerning the issuer's representations about them." *Id.* ¶ 47. Defendants continually represented to Plaintiffs that their various companies would act together to provide Plaintiffs with "continued review, oversight, and investigation" of Plaintiffs' investments. *Id.* ¶ 60. They specified that they "appl[ied] financial and accounting tests to verify receipts and the subject ticket business activities," "examin[ed] the Ponzi Operators' books and records," and "attend[ed] regular meetings to 'check in' with the Ponzi Operators and to monitor business activity and performance." *Id.* ¶ 58.

Plaintiffs assert that, in reality, this due diligence was either not performed or not reasonably undertaken, and as such Defendants "had no reasonable basis whatsoever to recommend" these investments. *Id.* ¶ 61.

## C.     Investments

Blank made his first investment in ticket resales around March 14, 2016. Elenowitz had told Blank that he was able to get him two of the "best and most sought after ticket funds"— *Hamilton* and Adele—but "only if [Blank] also invested in the 'Main Fund.'" *Id.* ¶ 52. Accordingly, Blank invested $300,000 that would be split evenly between the '*Hamilton* Fund,' 'Main Fund,' and 'Desert Trip Fund.' *Id.* ¶¶ 52-53.

From March through December 2016, Blank regularly checked in and spoke with Elenowitz, who continued to assure Blank that "the ticket business was in great shape," Plaintiffs' investments were sound, and Defendants were conducting "regular review of the ticket business" which "revealed absolutely no concern or red flags." *Id.* ¶¶ 54-55. After continually receiving assurances from Elenowitz, around August 10, 2016 Plaintiffs invested an additional $1,200,000. *Id.* ¶ 57.

Plaintiffs assert that they relied on the Defendants' misrepresentations and omissions in deciding to invest in the ticket resale scheme. *Id.* ¶ 62. Those misrepresentations, in conjunction with Defendants' "known failure to conduct a reasonable review and investigation" of the "Ponzi Operators" and their business, resulted in "the misappropriation of millions of dollars" raised from investors, including Plaintiffs' $1,500,000 investment. *Id.* ¶ 63.

## II.    Procedural Background

Plaintiffs initiated this action on February 6, 2017. ECF No. 1. On March 21, 2017, Plaintiffs filed an amended complaint. ECF No. 22 ("FAC"). On October 6, 2017, Defendants moved to dismiss the complaint for failure to state a claim. ECF Nos. 43 ("Boswell Mem"), 45 ("Elenowitz Mem"), 47 ("TriPoint Capital Mem"), 49 ("TriPoint Global Mem"). Plaintiffs filed their opposition brief on November 6, 2017. ECF No. 54 ("Pl. Mem"). On November 13, 2017, Defendants filed their reply briefs. ECF. Nos. 55 ("Elenowitz & TriPoint Global Reply"), 56 ("Boswell & TriPoint Capital Reply"). Accordingly, the Court considers this motion fully submitted.[2]

---

[2] On November 30, 2017, after briefing on the motion to dismiss was completed, Plaintiffs filed a letter alerting the Court to opinions issued in related matters: *Nagelberg v. Meli*, No. 17-cv-2524 (S.D.N.Y. Oct. 27, 2017) (LLS) and *I.B. Trading v. TriPoint*, No. 17-cv-1962 (S.D.N.Y. Nov. 16, 2017) (JGK). ECF No. 57. The Court has considered these decisions to the extent that they raise relevant issues.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In its evaluation of the pleadings, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in Plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, a complaint will not suffice and is properly dismissed where, as a matter of law, it tenders "naked assertion[s]" devoid of further factual enhancement or does not otherwise "raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 557-58. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).

Securities fraud claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." The claim must "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.* (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).

Additionally, under the PSLRA a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted). Still, pleading of "detailed evidentiary matter" is not required to state a claim for relief even under these heightened pleading standards. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (citations omitted).

In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *McCarthy v. Dun & Badsheet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).

**DISCUSSION**

I.     **Section 10(b) and Rule 10b-5 of the Securities Exchange Act**

To succeed on a Section 10(b) claim, a plaintiff must allege (1) a material

misrepresentation or omission by the defendant; (2) scienter; (3) in connection with the purchase

or sale of securities; (4) reliance upon the misrepresentation or omission; (5) economic loss; and

(6) loss causation. *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337 (2d Cir.

2011).

A.     **Material Misrepresentations or Omissions**

Rule 10b–5 "renders it unlawful to make any untrue statement of a material fact or to

omit to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading." *Levy v. Maggiore*, 48 F. Supp. 3d

428, 444 (E.D.N.Y. 2014) (citation and internal quotation marks omitted). "A statement is

considered materially misleading under § 10(b) when its representations, viewed as a whole,

would have misled a reasonable investor." *Id.* (citations and internal quotation marks omitted).

It is not sufficient to allege that the investor might have considered the misrepresentation or

omission important, nor is it necessary to assert that the investor would have acted differently if

an accurate disclosure was made. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir.

2000). Materiality is a mixed question of law and fact, and accordingly at the motion to dismiss

stage "a complaint may not properly be dismissed . . . on the ground that the alleged

misstatements or omissions are not material unless they are so obviously unimportant to a

reasonable investor that reasonable minds could not differ on the question of their importance."

*Id.* (citation and internal quotation marks omitted).

In cases such as this, where there are multiple defendants, the complaint must allege that

each particular defendant "'made' the material misstatements." *Janus Capital Group, Inc. v.*

*First Derivative Traders*, 564 U.S. 135, 141 (2011) (quoting 17 C.F.R. § 240.10b–5(b)). One "makes" a statement by stating it – a defendant does not "'make' a statement" simply by "prepar[ing] or publish[ing] [it] on behalf of another." *Id.* at 142. Instead, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* Thus, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07-cv-318, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Indeed, the "claim may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *In re Bear Stearns Co., Inc. Sec., Derivative and ERISA Litig.*, 763 F. Supp. 2d 423, 485 (S.D.N.Y. 2011).

Here, Plaintiffs allege that Defendants materially misrepresented and omitted material information during (a) a January 11, 2016 meeting and (b) subsequent conversations between January and December 2016. Such misstatements related to: (i) the extent of Defendants' investigations into the ticket business; (ii) the financial condition and security of the ticket business; (iii) their status as a "Trusted Advisor" and intention to act as Plaintiffs' "Trusted Advisor;" (iv) TriPoint Global's role as a broker-dealer, and (v) receiving commissions for soliciting investors into the ticket sale business. Pl Mem at 14. Plaintiffs contend that these statements were materially false and misleading because Defendants did not undertake the promised investigations and due diligence. They assert that a reasonable investigation "would have revealed the presence of numerous 'red flags.'" FAC ¶ 6.

Defendants, in turn, argue that Plaintiffs have failed to allege any material misstatements, and that their allegations are conclusory and fail to identify which Defendant made which statements.

## January 11, 2016 Statements

As detailed above, Plaintiffs contend that Elenowitz made numerous false or misleading statements during his January 11, 2016 meeting with Blank.

The Court first considers who can be held liable for the alleged misstatements. Plaintiffs only contend that Elenowitz actually made these remarks. Plaintiffs seek to hold Boswell, TriPoint Global, and TriPoint Capital liable for the statements under the group pleading doctrine, which creates a presumption "that certain group-published documents [such as statements in prospectuses, registration statements, annual reports, and press releases]. . . are attributable to corporate insiders involved in the everyday affairs of the company." *In re UBS AG Sec. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *9 (S.D.N.Y. Sept. 28, 2012). However, as an initial matter it is unclear whether the group pleading doctrine survives *Janus*. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 637-41 (S.D.N.Y. 2017) (describing split within District over whether group pleading doctrine still applies and holding it no longer applies); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 241 (S.D.N.Y. 2018) (same and holding doctrine still applies). In any event, the group pleading doctrine applies only to collectively-authored written documents, not to oral statements. *Camofi Master LDC v. Riptide Worldwide, Inc.*, No. 10–cv–4020, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011). Since Plaintiffs only allege that Elenowitz made oral statements to Blank during the January 11th meeting, Boswell cannot be held liable for those statements.[3] *See Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp.

---

[3] The Court separately addresses Plaintiffs' allegations with respect to alleged misstatements on the TriPoint Entities' webpage.

2d 547, 572 n.13 (S.D.N.Y. 2012) (CFO not liable for oral statements made by chair of board because plaintiff did not overcome "the well-established rule that the group-pleading doctrine does not apply to oral statements").

Nevertheless, TriPoint Global and TriPoint Capital can be held liable for the aforementioned statements. Plaintiffs allege that Elenowitz served as senior principal and CEO of TriPoint Global and TriPoint Capital. FAC ¶ 16. Elenowitz was acting within the scope of his authority as a leader of both companies when he sought Blank's investment. Accordingly, TriPoint Global and TriPoint Capital "may be liable for the misrepresentations or omissions of [Elenowitz]." *I.B. Trading*, 280 F. Supp. 3d at 535 n.3 (citing *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 551-53 (S.D.N.Y. 2007)).

Next, the Court considers whether the statements are materially misleading. Plaintiffs sufficiently allege when, where, and by whom these statements were made: By Elenowitz at the Sage Bistro restaurant in Woodbury, New York on January 11, 2016. FAC ¶ 30. However, some of Elenowitz' statements are materially false or misleading, while others fail to meet the pleading standard.

First, statements regarding the extent of Defendants' investigations into the ticket business and due diligence are actionable. As Plaintiffs allege, such statements are false or misleading because Elenowitz either (1) misrepresented that he conducted due diligence, as any reasonable investigation would have revealed the nature of the Ponzi scheme, or (2) conducted an investigation and affirmatively misrepresented that the investment was sound. Such misrepresentations are material because they would have misled a reasonable investor. Indeed, when considering similar claims against Elenowitz, Boswell, and TriPoint Global, The Honorable Judge Koetl concluded that representations that "TriPoint had vetted and completed

12

full due diligence related to the ticket investment and the companies offering the investment" were materially misleading. *I.B. Trading*, 280 F. Supp. 3d at 537.

Second, Elenowitz' assertions that the ticket resale business was a "no-brainer," "recession proof," and a "can't lose" investment are not materially misleading. Such statements are "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable." *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (collecting cases). "Puffery" encompasses "statements [that] are too general to cause a reasonable investor to rely upon them," *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009), and thus "cannot have misled a reasonable investor[.]" *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996).

Here, a reasonable investor would have been wary of an investment presented as a "no-brainer" that "can't lose." The statements simply "did not, and could not, amount to a guarantee" that the investment would be profitable. *ECA*, 553 F.3d at 206. Thus, these statement constitute mere puffery and are not actionable as a matter of law.

Third, for the same reasons, statements about TriPoint's status as a Trusted Advisor are not actionable. Descriptions of professionals as "trusted advisors" are "classic examples of puffery." *Barrett v. PJT Partners, Inc.*, No. 16-cv-2841, 2017 WL 3995606, at *5 (S.D.N.Y. Sept. 8, 2017). Such statements "are too general and too common in the industry for a reasonable investor to rely on them as statements of fact." *Id.* (citing *ECA*, 553 F.3d at 205-06). Furthermore, in order to adequately plead falsity, Plaintiffs must allege that the identified statements were either false at the time they were made or failed to contain other information that would have made them not misleading. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 557

(S.D.N.Y. 2014). That is, Plaintiffs must allege that Defendants were not "Trusted Advisors." Here, the complaint does not allege that the TriPoint Entities or Elenowitz were not trusted advisors to any clients. *See Barrett*, 2017 WL 3995606, at *5 (no material misstatement because "[t]he fact that [Defendant] defrauded certain clients by leveraging [company's] client relationships does not mean that [company] did not have deep and long standing client relationships."). Accordingly, such statements are not materially misleading.

Fourth, Elenowitz' failure to disclose that TriPoint Global was a licensed broker-dealer that was receiving commissions for soliciting investors, and his affirmative representations that he was *not* receiving commissions, are actionable. That Defendants were receiving commissions for directing people to the ticket resale business is patently material because it speaks to their pecuniary motivations. *See Nanopierce Tech., Inc. v. Southridge Capital Mgmt LLC*, No. 02-cv-0767, 2003 WL 22882146, at * 13 (S.D.N.Y. Dec. 4, 2013) (failure to disclose commission actionable).

**January-December 2016 Conversations**

Plaintiffs allege that Elenowitz made similar representations to Blank during "subsequent conversations" at "various times" between January and December 2016. FAC ¶¶ 44-48. Plaintiffs again only specifically identify Elenowitz as the "maker" of the alleged misrepresentations. For the reasons adduced above, Elenowitz, TriPoint Global, and TriPoint Capital can be held liable for these statements, while Boswell cannot.

Many of these statements mirror those made during the January 11th meeting. However, Plaintiffs fail to specifically identify where and when the statements were made, as required by Rule 9(b) and the PSLRA. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Merely alleging that misstatements were made "in numerous conversations" is insufficiently specific to

meet this heightened pleading standard. *See Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 214 (S.D.N.Y. 2009) (allegations of misstatements 'throughout the [c]lass [p]eriod' not sufficiently specific). Accordingly such statements are not actionable.

**Website Statements**

Plaintiffs next seek to hold Defendants liable for statements made on the TriPoint Capital, TriPoint Global, and BANQ websites.

First, the Court considers who could be liable for such statements. TriPoint Capital and TriPoint Global clearly can be liable for statements "made" on their own corporate websites. Plaintiffs seek to further hold Boswell and Elenowitz liable through the group pleading doctrine. Assuming *arguendo* that the group pleading doctrine survives *Janus*, it would not apply here because "it is far from obvious that senior corporate officers would be involved in drafting text for a corporate website." *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). Plaintiffs adduce no specific allegations that Boswell or Elenowitz were involved with the creation, development, or maintenance of the websites or the information contained thereon. At its core, Plaintiffs' theory is that the Individual Defendants are liable for any statement that has any link to any TriPoint Entity. The group pleading doctrine does not extend so far. *See Camofi Master*, 2011 WL 1197659, at *6 (group pleading doctrine "is extremely limited in scope"). Accordingly, only TriPoint Global and TriPoint Capital can be held liable for the statements on their websites.

Second, in any event the website statements are not actionable. For the reasons articulated above, proclamations that the TriPoint Entities provide "Trusted Advice," FAC ¶ 31, are mere puffery. *See Banco Industrial de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 513 (S.D.N.Y. 2012) (website representations that company "will earn your trust" with

"competence" and "confidence" are "mere puffery"). With respect to statements that the TriPoint Entities have "specialized practices in capital markets, advisory, corporate consulting . . . corporate governance and compliance services," and that they provide "extensive financial services" and "investigative services," FAC ¶ 32, Plaintiffs have not explained how or why such statements are false. *See San Leandro*, 75 F.3d at 812. Whether or not Defendants provided valuable financial services to these Plaintiffs has no bearing on whether they generally possess the advertised experience and provide the advertised services. *See Barrett*, 2017 WL 3995606, at *5.

### B. Scienter

The Court next addresses scienter. The requisite state of mind in 10b–5 claims is "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. Plaintiffs must "state with particularity . . . the facts evidencing scienter." *Id.* at 313. Such facts must either demonstrate "that the defendants had the motive and opportunity to commit fraud" or constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.

The Circuit has provided at least five non-exclusive examples of how a plaintiff may adequately plead scienter - namely, allegations that the defendants: "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Novak*, 216 F.3d at 311 (internal citations omitted).

To "raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that [Defendants] benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F. 3d at 198 (citation omitted). It is insufficient for the plaintiff to show "[m]otives that are common to most corporate officers, such as the desire for the

corporation to appear profitable and the desire to keep stock prices high to increase officer compensation[.]" *Id.*; *accord Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("[A] generalized motive . . . which could be imputed to any publicly owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter.").

To satisfy the "conscious misbehavior or recklessness" prong, the plaintiff must allege facts showing "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendants or so obvious that the defendant must have been aware of it." *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). "An egregious refusal to see the obvious, or to investigate the doubtful, may . . . give rise to an inference of recklessness." *Chill*, 101 F.3d at 269. The plaintiff may allege that the defendants "knew facts or had access to information suggesting his public statements were not accurate, or failed to check information that he had a duty to monitor." *Nathel v. Siegal*, 592 F. Supp. 2d 452, 464 (S.D.N.Y. 2008) (citing *Novak*, 216 F.3d at 311).

In order to evaluate whether the PSLRA's scienter standard has been met, courts consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. at 323. A "strong inference" that a defendant acted with scienter is not an irrefutable inference, though it "must be least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324; *see City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) (the "tie . . . goes to the plaintiff").

## 1. Elenowitz

Here, Plaintiffs sufficiently allege that Elenowitz had a motive: his corporation received commissions based on the amount of money raised for the investments. Thus, if he did not successfully urge Plaintiffs to invest in the ticket resale business, he would have earned less

money. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 179-80 (S.D.N.Y. 2009) (commission structure gave Defendant motive for unlawful acts). Further, Elenowitz' corporate position gave him a clear opportunity to commit this fraud. The fact that Elenowitz not only failed to disclose the commissions, but instead deceptively represented to Plaintiffs that TriPoint would forgo collecting commissions on Plaintiffs' investments, further evinces his scienter. FAC ¶ 118. Accepted as true, these allegations sufficiently allege motive and opportunity. *See I.B. Trading*, 280 F. Supp. 3d at 538.

Assuming *arguendo* that Elenowitz' motive and opportunity is not sufficiently concrete to infer scienter, Plaintiffs satisfactorily identify circumstances indicative of conscious misbehavior or recklessness. According to the complaint, Elenowitz had not conducted due diligence or else he would have discovered the ticket resale business's fraudulent nature. Despite his lack of investigation, Elenowitz repeatedly told Plaintiffs that he had conducted due diligence and had close ties with the operators of the ticket resale business. This conduct represents an extreme departure from the standards of care, particularly when viewed in the context of Elenowitz' repeated assurances that he "would continue to have [Plaintiffs'] back" and would "make sure that every investment was fully and completely vetted, reviewed and investigated." FAC ¶ 44. *See Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47-48 (2d Cir. 1978) (defendant's assurances that plaintiff's investment advisor "knew what he was doing" without investigating to determine "whether there was a basis for the [defendant's] assertions" met scienter requirement).

### 2. Boswell

Plaintiffs have not adduced specific allegations of scienter as to Boswell. In fact, Plaintiffs make no specific claims about Boswell aside from his managerial positions at TriPoint Global and TriPoint Capital. "[C]ourts in this Circuit have long held that accusations founded on

nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Retirement Sys. v. Avon Prods., Inc.*, No. 11-cv-4665, 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014) (collecting cases). Accordingly, Plaintiffs have not stated a claim against Boswell.

### 3. TriPoint Global and TriPoint Capital

When the defendant is a corporation, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The scienter of an employee acting within the scope of employment can be imputed to the employer. See *Vining v. Oppenheimer Holdings Inc.*, No. 08-cv-4435, 2010 WL 3825722 at *12 (S.D.N.Y. Sept. 29, 2010) (citation omitted); accord *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009) ("[S]cienter by management-level employees is generally sufficient to attribute scienter to corporate defendants."). Since Elenowitz spoke to Plaintiffs in his official capacity as CEO of TriPoint Global and TriPoint Capital, Elenowitz' scienter can be imputed to the corporation.

### C. Reliance

"The reliance and loss causation elements of a securities fraud claim are analogous to but-for and proximate causation, respectively." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 251 (S.D.N.Y. 2013) (citing *ATSI Commc'ns.*, 493 F.3d at 106). To prove reliance, "the plaintiff must show that but for the material misleading statement or omission, he would not have transacted in the security." *Id.* "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)).

Additionally, the plaintiff must show that his reliance was reasonable. *Id.* (citing *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109-10 (2d Cir. 2005)). Thus, if "through minimal diligence, the investor should have discovered the truth," reliance would not be reasonable. *Id.* at 252. In this analysis, "courts consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (citation omitted). While the Circuit has not issued a definitive list of factors that weigh on the reasonableness of reliance, it has provided a list of relevant factors:

> (1) The sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Ashland*, 652 F.3d at 338 (citing *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)).

Additionally, "[r]eliance is presumed in securities actions involving primarily a failure to disclose, and may be presumed where plaintiffs plead an omission of a material fact by one with a duty to disclose." *In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 985 F. Supp. 2d 428, 469 (S.D.N.Y. 2013) (internal citations and quotation marks omitted).

Here, Plaintiffs allege that they relied on Defendants' assurances that they would act in Plaintiffs' best interest and conduct investigations to identify an appropriate, tailored, low-risk investment when they invested millions of dollars with Defendants. They contend that such reliance was reasonable because Blank developed a relationship of trust with Defendants, and because Defendants, both in person and via their website that they promoted, touted their

expertise. Further, they argue that reliance is presumed here because Defendants omitted material facts that they had a duty to disclose—namely, that they did not conduct adequate due diligence and were receiving commissions for encouraging their investments. Defendants respond that (1) since Plaintiffs have not alleged a material misstatement, they cannot allege reliance, (2), in any event, as sophisticated investors Plaintiffs' reliance was unreasonable, and (3) since the complaint only alleges conversations with Blank, other Plaintiffs cannot allege reasonable reliance. For the first time in their reply papers, Defendants additionally argue that the 875 Holdings, LLC Executive Summary, incorporated into the subscription Agreement, stated that "the investments entailed a 'high degree of risk.'" Elenowitz Reply at 5 (citing Ex. A at 3, 9).

Here, Plaintiffs have the better of the argument. As the Court already held, Plaintiffs have alleged actionable material misstatements. Indeed, since Elenowitz failed to disclose material facts, reasonable reliance is presumed. In any event, and even assuming Plaintiffs are sophisticated investors, this Court determines that Plaintiffs' reliance on an ostensibly trustworthy financial advisor was reasonable. Further, even though Elenowitz only met with Blank, "[i]ndirect reliance is established if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to the plaintiff." *I.B. Trading*, 280 F. Supp. 3d at 539 (citation omitted). During conversations with Elenowitz, Blank represented that he was the trustee of the Gift Trust Plaintiffs. FAC ¶ 35. Accordingly, Elenowitz presumably intended that the misrepresentations about the investments would be relayed to the Gift Trust Plaintiffs. Indeed, Defendants accepted money from all Plaintiffs. *See id.* ¶ 57. This counts in favor of a showing of reasonable reliance. *See I.B. Trading*, 280 F. Supp. 3d at 539. Finally, a "general disclaimer"

in an Executive summary "does not eclipse the specific statements made by [Elenowitz]—wholly separate from the Executive Summary." *I.D. Trading*, 280 F. Supp. 3d at 539. Plaintiffs have thus pled that reliance here was reasonable.

Accordingly, the motions to dismiss the 10-b count by Defendants Elenowitz, TriPoint Capital, and TriPoint Global are DENIED, except that the alleged misstatements identified above as puffery are not actionable.[4] Boswell's motion to dismiss this count is GRANTED for failure to adduce any specific allegations against him.

## II. Section 9(a)(4) and 9(f) of the Exchange Act

A claim under Section 9(a)(4) "requires a (1) misstatement or omission (2) of material fact (3) made with scienter (4) for the purpose of inducing a sale or purchase of a security (5) on which the plaintiff relied (6) that affected plaintiff's purchase or selling price." *I.B. Trading*, 280 F. Supp. 3d at 540 (citations omitted). The Section "applies specifically to broker-dealers." *Id.* Importantly, it "requires that the violation . . . be 'willful' and that the price of the security that is purchased or sold be affected by the violation." *Id.* (citation omitted).

Defendants contend that (1) Plaintiffs fail to adequately plead material misstatements or scienter and (2) Plaintiffs make no allegations regarding the purchase price of the investments at issue. Defendants contend that those investments were offered at a fixed price as part of a private placement. Plaintiffs respond that Defendants' misrepresentations and omissions clearly affected the purchase price.

For the reasons discussed above, Plaintiffs have met their burden on factors (1) – (5). However, they have not sufficiently alleged that Defendants' misstatements or omissions affected the purchase or selling price. Plaintiffs make no specific allegation about the price.

---

[4] Defendants do not appear to contest loss causation. In any event, the Court determines that all elements of the 10-b claim are adequately pled.

Accordingly, Defendants' motions to dismiss this count are GRANTED. *See I.B. Trading*, 280 F. Supp. 3d at 540 (dismissing 9(a)(4) claim for failure to "plead that the defendants' misrepresentations affected the price of the ticket investments").

## III.  Negligent Misrepresentation

In order to state a claim for negligent misrepresentation under New York law, "the plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschultz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks and citation omitted). The "duty" element "limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* (internal quotation marks and citation omitted). In order to show near privity, a plaintiff must allege "(1) awareness that the [representations] were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance." *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (N.Y. 1989).

As discussed above, Plaintiffs have alleged that Defendants Elenowitz, TriPoint Capital, and TriPoint Global made false representations which Plaintiffs intended to and did reasonably rely on to their detriment. Such misrepresentations clearly related to a serious purpose: the investment of millions of dollars.

The issue is whether Plaintiffs have alleged that Defendants had a special relationship with them. Defendants contend that Plaintiffs do not allege that they entered into any type of agreement or customer relationship with either of the TriPoint Entities. They further assert that TriPoint Global's role as a placement agent in connection with the investments at issue does not give rise to a relationship with Plaintiffs. Plaintiffs respond that a special relationship existed because Defendants held themselves out as trusted financial advisors and made repeated representations over a months-long period that they would provide trusted financial advice.

The Court concludes that Plaintiffs have sufficiently alleged a special relationship with Elenowitz and, through him, TriPoint Capital and TriPoint Global. As discussed above, Elenowitz repeatedly represented that he and the TriPoint Entities were providing trusted, reliable advice that was in Plaintiffs' best interest. He even represented that Defendants would forego commissions "to establish a long term business and investment relationship" with Plaintiffs. FAC ¶ 51. By making such representations in connection with investments in the ticket resale business, Elenowitz clearly was aware that the information would be used for the purpose of investments. *See I.B. Trading*, 280 F. Supp. 3d at 543.

Accordingly, the motions to dismiss the negligent misrepresentation claim by Elenowitz, TriPoint Capital, and TriPoint Global are DENIED. Boswell's motion to dismiss this count is GRANTED because Plaintiffs have not alleged that he made any false representations.

## IV.    Fraudulent Misrepresentation

"Under New York law, [t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (citation and internal

quotation marks omitted). Courts have held that "[t]hese elements essentially mirror those involved in a section 10(b) claim." *Sarafianos v. Shandong Tada Auto-Parking Co., Ltd.*, No. 13-cv-3895, 2014 WL 7238339, at *3 (S.D.N.Y. Dec. 19, 2014) (citations omitted); *accord I.B. Trading*, 280 F. Supp. 3d at 544 (collecting cases). The Circuit has affirmed that "'a defendant may be guilty of fraudulent misrepresentation for making a false statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge.'" *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 122-23 (E.D.N.Y. 2011) (quoting *DiRose v. PK Mgmt Corp.*, 691 F.2d 628, 632 (2d Cir. 1982)).

For the reasons discussed above, Plaintiffs have pleaded that Elenowitz, TriPoint Global, and TriPoint Capital knowingly made material misrepresentations on which Plaintiffs justifiably relied. This is sufficient to state a claim. *See I.B. Trading*, 280 F. Supp. 3d at 544. Accordingly, the aforementioned Defendants' motions to dismiss the fraudulent misrepresentation claim are DENIED. For the reasons articulated above, Boswell's motion to dismiss this count is GRANTED.

## V. Unjust Enrichment and Constructive Trust

The elements of an unjust enrichment claim under New York law are "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) circumstances are such that in equity and good conscience, the defendant should return the money or property to the plaintiff." *Myun-Uk Choi v. Tower Research Capital LLC*, 165 F. Supp. 3d 42, 50 (S.D.N.Y. 2016) (quoting *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001)). In this analysis, "New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant;" instead, "[i]t merely requires that the plaintiff's relationship with a defendant not be 'too attenuated.'"

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010) (quoting *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (N.Y. 2007)). In the end, "'[t]he essential inquiry . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *Id.* (quoting *Sperry*, 8 N.Y.3d at 215-16). "Claims of unjust enrichment . . . are equitable in nature and generally are not permitted if a legal remedy is available." *Speedfit LLC v. Chapco Inc.*, No. 15-cv-1323, 2016 WL 5793738, at *10 (E.D.N.Y. June 29, 2016) (collecting cases).

Here, Defendants contend that Plaintiffs do not state an unjust enrichment claim because they do not allege that Defendants received any improper compensation from them or were otherwise enriched at Plaintiffs' expense. They argue that receiving commissions from the alleged Ponzi scheme operators is insufficient to state a claim. Plaintiffs respond that Defendants were unjustly enriched because they materially misrepresented the investment scheme to Plaintiffs and received commissions for feeding Plaintiffs this false information.

Plaintiffs have alleged that they "plausibly conferred some benefit on Defendants, albeit indirectly"—i.e. the receipt of commissions for inducing Plaintiffs' investments—and that "Defendants profited." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 234 (S.D.N.Y. 2012). At this stage, these allegations are sufficient. *See I.B. Trading*, 280 F. Supp. 3d at 545 ("[P]lainly it would be 'against equity and good conscious to permit' the defendants to retain commissions based on money obtained from allegedly swindled investors."). Moreover, while Plaintiffs have not alleged that Boswell made any material misstatements here, they have sufficiently alleged that, as a senior executive of TriPoint Global and TriPoint Capital, he plausibly benefited from his organizations' inducement of Plaintiffs. Accordingly, at this

early pleading stage all Defendants' motions to dismiss the unjust enrichment claim are DENIED.

To establish a constructive trust, the movant must establish "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F. 2d 341, 352 (2d Cir. 1992) (citations omitted). Courts have clarified that "[t]hese elements provide guideposts, but should not be rigidly interpreted as 'a constructive trust may still be imposed even if all of the elements are not established.'" *Mecca v. Lennon*, No. 16-cv-1414, 2018 WL 3202067, at *2 (E.D.N.Y. Mar. 27, 2018) (quoting *Marini v. Lombardo*, 9212 N.Y.S.2d 693, 696 (N.Y. 2d Dep't 2010)). "New York law is clear that a constructive trust is an equitable remedy." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 216 (2d Cir. 2004). Thus as with unjust enrichment, "a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Pons v. People's Republic of China*, 666 F. Supp. 2d 406, 415 (S.D.N.Y. 2009) (citation omitted).

As Defendants note, Plaintiffs did not respond to Defendants' arguments against the establishment of a constructive trust. Thus, it appears they have abandoned this claim. *See Lipton v. Cnty. Of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). In any event, since courts have held that a constructive trust is a "remedy" and not "the basis for a separate cause of action," this claim is DISMISSED without prejudice. *See I.B. Trading*, 280 F. Supp. 3d at 545.

## VI.    Promissory Estoppel

To state a claim for promissory estoppel under New York law, a plaintiff must allege "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3)

injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (citation omitted).

Plaintiffs allege that Defendants made a clear promise to act as trusted advisors, identify low-risk investments, and conduct due diligence; Plaintiffs reasonably relied on that promise; and they were injured when they lost their investment to the Ponzi scheme. Defendants contend that Plaintiffs fail to allege the existence of any promise to them, since Plaintiffs were not their clients and they had no clear or unambiguous agreement. At this early pleading stage, the Court agrees with Plaintiffs. Whether Defendants' aforementioned representations constitute clear or unambiguous promises are "questions of fact, and cannot be resolved on a motion to dismiss." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 379 n. 110 (S.D.N.Y. 2004).

Accordingly, Elenowitz', TriPoint Global's, and TriPoint Capital's motions to dismiss the promissory estoppel count are DENIED. Since Plaintiff does not allege that he made any promises, Boswell's motion to dismiss this claim is GRANTED.

## VII. Breach of Fiduciary Duty

"Investment advisors owe a fiduciary duty to the clients they advise." *I.B. Trading*, 280 F. Supp. 3d at 542 (quoting *Rasmussen v. A.C.T. Envtl. Serv's, Inc.*, 292 A.D.2d 710, 739 (N.Y. 2002)). Under New York law, "the elements of a claim for breach of fiduciary duty are breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 180-81 (S.D.N.Y. 2014) (citation omitted). New York courts "employ a flexible approach in determining whether a fiduciary duty exists." *I.B. Trading*, 280 F. Supp. 3d at 541. Indeed,

> Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has

been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another.

*Id.* (quoting *Penato v. George*, 383 N.Y.S.2d 900, 904-05 (N.Y. 1976)). "At base, the existence of a fiduciary relationship is a factual question." *Id.* at 542 (citation omitted). Additionally, "[w]hen a breach of fiduciary duty claim is, in substance, a claim of fraud, the requirements of Rule 9(b) are triggered." *Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

Plaintiffs allege that Defendants owed them a fiduciary duty based on their repeated representations that they would serve as trusted financial advisors, investigate potential investments, and ensure that all opportunities presented to Plaintiffs would fully meet their stated requirements. Defendants contend that Plaintiffs fail to allege the existence of a fiduciary relationship or that they breached any such duty.

Here, the Court agrees with Plaintiffs. Elenowitz', and through him TriPoint Global's and TriPoint Capital's, repeated assurances that they were looking out for Plaintiffs' best interests and conducting due diligence as trusted advisors evinces a fiduciary relationship. Indeed, at their initial meeting Elenowitz stated that he was eager to present Plaintiffs with investment opportunities in the ticket resale business "because it would give [Elenowitz and TriPoint] an opportunity to demonstrate what [the Defendants] could do for the [Plaintiffs]." FAC ¶ 41. As discussed above, these Defendants breached this duty by failing to perform the requisite due diligence. Also for those reasons, under this heightened pleading standard Plaintiffs fail to state a claim against Boswell.

Accordingly, Elenowitz,' TriPoint Global's, and TriPoint Capital's motions to dismiss the breach of fiduciary duty count are DENIED. Boswell's motion to dismiss this count is GRANTED.

## VIII. New York General Business Law § 349

To state a claim under New York General Business Law § 349, "a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Golemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995)). In order to be "consumer-oriented," the alleged conduct "must have a broad impact on consumers at large." *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 252 (S.D.N.Y. 2012) (citation and internal quotation marks omitted). Accordingly, "private contractual disputes upon matters not affecting the consuming public are not actionable under this section." *Id.* (quoting *Shou Fong Tam v. Met. Life Ins. Co.*, 913 N.Y.S.2d 183, 185 (N.Y. 1st Dep't 2010)). Moreover, the "clear weight of authority is that claims arising out of securities transactions are not the type of consumer transactions for which General Business Law § 349 was intended to provide a remedy." *Id.* (citations omitted).

Here, Plaintiffs allege that Defendants' marketing materials and direct representations impacted the public's trust in them. Defendants respond that Plaintiffs fail to allege any public harm resulting from this private placement transaction. Defendants have the better of the argument here. Plaintiffs have not alleged that Defendants' conduct was "sufficiently 'consumer oriented' to fall within the bounds of § 349." *I.B. Trading*, 280 F. Supp. 3d at 545. Accordingly, all Defendants' motions to dismiss this count are GRANTED.

## CONCLUSION

Having considered all of the parties' arguments, Defendants' motions to dismiss this action are GRANTED in part and DENIED in part. The Clerk of Court is kindly requested to terminate the motions at ECF Nos. 42, 44, 46, and 48.

**SO ORDERED.**

**Dated:** August 31, 2018

**New York, New York**

**HON. ANDREW L. CARTER, JR.**

**United States District Judge**